NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

CHARLES PRATT,

        Plaintiff,

vs.

THE PORT AUTHORITY OF NY & NJ, et al.,

        Defendants.

Civil Action No. 11-4880(FSH)

**OPINION**

May 20, 2013

---

**HOCHBERG, District Judge**:

This matter comes before the Court upon Defendants' Motion for Summary Judgment. The Court has considered the submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.    BACKGROUND[1]**

Plaintiff and his wife, Carla Pratt, married on June 15, 2007 but were separated in 2008. Due to the frequency of their arguments, Plaintiff was required to evict Carla Pratt from his public housing sometime in 2008. They are currently in the process of obtaining a divorce.

On October 14, 2010, Carla Pratt informed Plaintiff that she had lost her nametag for her job at the Hyatt Regency Jersey City. Plaintiff told Carla Pratt that he would go with her the next day to the Hyatt Regency to speak with her boss about the lost nametag. Carla Pratt told Plaintiff that it would not be necessary for him to go to her work to speak to her boss.

---

[1] Unless otherwise noted, the facts set forth below are taken from the parties' Rule 56.1 Statements and are not in dispute.

The following day, October 15, 2010, once Plaintiff and Carla Pratt arrived at Exchange Place in Jersey City, Carla Pratt exited the light rail station and then walked a block to the Exchange Place PATH train station in search of a police officer. Carla Pratt told Plaintiff that he was not allowed to "come with [her] on [her] job," and told Plaintiff that she was "going to get a police officer." Plaintiff followed Carla Pratt into the PATH train station.

Once inside, Carla Pratt encountered Officer Nicholas Pimienta of the Port Authority Police Department behind the turnstiles at the PATH station, and she asked the officer to explain to Plaintiff that he was not permitted to follow her to work.[2] Officer Pimienta told Plaintiff that he was not allowed to follow Carla Pratt to work.

Officer Pimienta asked both Plaintiff and Carla Pratt for identification. Carla Pratt left to go to the Hyatt Regency to obtain her information. Plaintiff remained with Officer Pimienta. Officer Pimienta and Plaintiff walked outside of the PATH station. Officer Pimienta asked Plaintiff to stay at his side while he made a phone call. Officer Pimienta called his supervisor to advise him of the situation and to get assistance in handling the domestic violence allegation. While Officer Pimienta was on the phone, Plaintiff walked away from him. Officer Pimienta walked over to Plaintiff to search him. Officer Pimienta handcuffed Plaintiff.[3] Officer Pimienta did not use his baton or any other weapon while handcuffing Plaintiff.[4]

---

[2] Defendants assert that Carla Pratt also informed Officer Pimienta that she had a prior restraining order against Plaintiff.

[3] Defendants assert that Officer Pimienta handcuffed Plaintiff for both of their safety as Plaintiff has become emotionally unstable and started to hyperventilate and cry hysterically.

[4] Plaintiff claimed in his Amended Complaint that he was thrown down to the ground by Officer Pimienta for no reason.

Once Carla Pratt returned, she declined to file a domestic violence claim against Plaintiff and instead filed paperwork with the Jersey City Police Department. Plaintiff requested an ambulance because he was having trouble breathing. The ambulance arrived fifteen to twenty minutes later and Plaintiff was transported to Christ Hospital in Jersey City for psychiatric evaluation.

Plaintiff alleged in his Amended Complaint that Defendants, Police Officer Pimienta, The Port Authority of New York and New Jersey and the Port Authority Police Department, violated his rights under the Fourth, Fifth, Sixth, Eighth[5] and Fourteenth Amendments to the United States Constitution, and brings claims pursuant to 42 U.S.C. §§ 1983 and 1988 for an unreasonable use of force to effect an arrest and false arrest; the New Jersey Constitution and New Jersey common law for battery.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that

---

[5] In his opposition to the instant Motion for Summary Judgment, Plaintiff concedes that he has not, and cannot, establish violations of his rights under the Sixth and Eighth Amendments. Accordingly, Summary Judgment will be awarded in Defendants' favor on these claims.

3

would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. The non-moving party must set out specific facts showing a genuine issue for trial using affidavits or as otherwise provided in Fed. R. Civ. P. 56(e) and Local Civ. R. 56.1, which provides that a summary judgment opponent "shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion."

B.   **ANALYSIS**

Defendants argue that they are entitled to summary judgment because: 1) Officer Pimienta is entitled to qualified immunity; 2) Officer Pimienta is entitled to immunity under New Jersey's Domestic Violence Act;[6] 3) Plaintiff has failed to establish any causal connection between any alleged excessive force and his alleged injuries; and 4) Plaintiff has failed to prove a Monell claim against the Port Authority of New York and New Jersey and the Port Authority Police Department.

1.   **Monell Claim Against the Port Authority**

The Amended Complaint asserts that the Port Authority and the Port Authority Police Department are liable for its officer's alleged use of excessive force and for the allegedly

---

[6] The Court need not reach Defendants' argument that Officer Pimienta is entitled to immunity under the New Jersey Domestic Violence Act, as it has determined that Officer Pimienta is entitled to qualified immunity on Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 and declines to exercise supplemental jurisdiction over any state law claims.

unlawful arrest and detention of Plaintiff. Plaintiff's claim against the Port Authority and the Port Authority Police Department arises under 42 U.S.C. § 1983, which creates a private cause of action for a violation of an individual's constitutional rights by a person acting under color of state law.

To prove a claim under § 1983, a plaintiff must establish that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). A municipal or local governmental entity such as the Port Authority and the Port Authority Police Department is considered a "person" within the meaning of 42 U.S.C. § 1983. *Peters v. Del. River Port Auth. of Pa. And N.J.*, 16 F.3d 1346, 1352 (3d Cir. 1994) (holding that a bi-state agency created by compact between two states is considered a "person" under § 1983).

Plaintiff asserts § 1983 claims against the Port Authority and the Port Authority Police Department on the grounds that an officer employed by these Defendants allegedly unlawfully detained him and used excessive force against him while handcuffing him. Pursuant to section § 1983, governmental entities cannot be held liable only for the actions of agents of its employees on a respondeat superior theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A governmental agency such as the Port Authority "may be liable under section 1983 only if it can be shown that its employees violated a plaintiff's civil rights as a result of a municipal policy or practice." *Williams v. West Chester*, 891 F.2d 458, 467 (3d Cir. 1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

"A government policy or custom can be established in two ways. Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action

issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations omitted).

A § 1983 plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged," *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown* , 520 U.S. 397, 404 (1997) (emphasis in original), or where "the policy in question concerns a failure to train or supervise municipal employees," a § 1983 plaintiff must show "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

In addition, plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990). In order to do this, "plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* at 851.

In the Amended Complaint, Plaintiff simply alleges that the Port Authority of New York and New Jersey, acting through the Port Authority's Police Department, "had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein." Plaintiff also alleges that these Defendants "failed to provide training and/or supervision of their police officer's [sic], and this failure amounts to a deliberate indifference to the safety and lives of the citizens of the Port Authority of New York and New Jersey." Finally,

Plaintiff alleges that Defendants "maintained an inadequate structure for risk containment and stress management relative to its police officers and failed to create proper means of containing such risk and managing such stress."

Pratt has failed to adduce evidence of any municipal policy or practice that resulted in Plaintiff's alleged injuries. In his opposition papers, Plaintiff asserts in conclusory fashion that the Port Authority is required to constantly train its officers in the use of force, that Defendant Pimienta acted the way he did in placing handcuffs on Plaintiff because he was instructed to do so by his supervisors after a phone call with them, and the Port Authority is responsible for Plaintiff's alleged injuries because Plaintiff tripped over Defendant Pimienta's foot while being handcuffed by him. However, Plaintiff points to no evidence in the record to support these statements. "Speculation and conjecture may not defeat a motion for summary judgment." *Acumed LLC v. Advanced Surgical Svcs.*, 561 F.3d 199, 228 (3d Cir.2009). Without evidence to support his § 1983 claims against the Port Authority and the Port Authority Police Department, Plaintiff has failed to demonstrate the existence of a genuine issue of material fact, and no reasonable factfinder could find in his favor at trial. Accordingly, the Court will grant summary judgment in favor of the Port Authority and the Port Authority Police Department on Plaintiff's claim of false arrest and the use of excessive force.

Plaintiff additionally contends that the Port Authority is liable for his injuries because of its failure to properly train Officer Pimienta. The inadequacy of police training may only serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1988). "Only where a municipality's failure to train its employees in a relevant

respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. Evidence that a certain officer may not have been properly trained will not alone suffice to place liability upon the Port Authority, nor will such evidence be sufficient to establish that an injury or accident could have been avoided if an officer had been properly trained. *Id.* at 390–91. "Adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [governmental entity] liable." *Id.* at 391. For liability to attach, the identified deficiency in the Port Authority's training program must be closely related to the ultimate injury. *Id.* "To adopt lesser standards of fault and causation would open municipalities and other government entities to unprecedented liability under § 1983." *Id.*

In his opposition papers, Plaintiff has not submitted any evidence as to how Port Authority police officers are instructed with regard to the use of force and effectuating arrests, nor has he explained why such training is inadequate. Plaintiff has also neglected to proffer a Port Authority training manual or expert witness on the subject. Because Plaintiff has failed to provide any evidence of deficiencies in the training that officers receive or examples of training needed, it cannot be said that the need for more or additional training is so obvious as to constitute deliberate indifference on the part of the Port Authority. Accordingly, summary judgment will be granted in favor of the Port Authority and the Port Authority Police Department on the claim that they inadequately train their police officers.

2. **Qualified Immunity**

Defendant Pimienta argues that the § 1983 claims against him cannot proceed because he is entitled to qualified immunity. Qualified immunity protects officers from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It affords officers not only a "defense to liability," but rather, "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The United States Supreme Court has established a two-part analysis for addressing a qualified immunity defense. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). First, a court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* The United States Court of Appeals for the Third Circuit has described this prong as an inquiry into "whether there is even a wrong to be addressed in an analysis of immunity." *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir.2007). Second, a court must decide whether the right at issue was "clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231. Under this prong, a court examines "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."[7] *Curley*, 499 F.3d at 207. "Qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2003) (Kennedy, J. Dissenting)).

On a motion for summary judgment, a defendant is entitled to summary judgment "if the Court can conclude, based on the undisputed facts in the record, that [d]efendant reasonably, though perhaps mistakenly, believed that [his] conduct was lawful in light of the clearly

---

[7] The decision of which of these two steps to consider first is left to the discretion of the district court. *Pearson*, 555 U.S. at 236.

established law[.]" *Mantz v. Chain*, 239 F.Supp.2d 486, 496 (D.N.J. 2002). However, summary judgment is not warranted when "the record compels the opposite conclusion or if there exist disputed issues of material fact relevant to the Court's evaluation of the 'objective reasonableness' of the Defendant['s] conduct." *Id.*

A claim of false arrest may be brought as a § 1983 claim as a violation of the Fourth Amendment. *Gibson v. Superintendent of NJ Dep't of Law and Public Safety*, 411 F.3d 427, 448 (3d Cir. 2005), *cert. denied*, 547 U.S. 1035 (2006). However, an officer is not liable under § 1983 if there was probable cause for the arrest, or he acted pursuant to an honest misunderstanding of the law or facts. *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 385 (2000). Therefore, a police officer may be entitled to qualified immunity if he had an "objectively reasonable belief" that probable cause existed, even if it did not in fact exist. *Id.* at 394.

To establish a Fourth Amendment excessive-force claim, a plaintiff "must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). Factors for the Court to consider in determining whether the use of force was excessive include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (*citing Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). "Additional factors include 'the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (*quoting*

*Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997) (abrogated on other grounds by *Curley v. Klem*, 499 F.3d 199 (3d Cir.2007)).

On the record before the Court, it is clear that Defendant Pimienta is entitled to qualified immunity because Plaintiff cannot establish that Defendant's conduct violated Plaintiff's constitutional rights. Plaintiff cannot establish that Officer Pimienta's conduct violated Plaintiff's Fourth Amendment guaranties against an unlawful seizure or use of excessive force. Defendant Pimienta had an "objectively reasonable belief" that probable cause existed to search Plaintiff prior to handcuffing him because Carla Pratt reported that he was following her against her will. Carla Pratt exited the light rail station in Jersey City and went all the way into the Exchange Place PATH station to search for a police officer to report Plaintiff for harassment. Additionally, Carla Pratt informed Defendant that she and Plaintiff had a history of domestic violence and had obtained a restraining order against Plaintiff. Furthermore, Plaintiff violated a police directive when he was told not to leave Defendant's side while he called his supervisors. Finally, Plaintiff was acting in an emotionally unstable manner, *i.e.*, crying hysterically to the point of hyperventilating, when Defendant decided to handcuff Plaintiff for his own and Defendant's safety. With respect to Plaintiff's excessive force claim, Plaintiff presents no facts in support of such a claim. The uncontroverted evidence indicates that Plaintiff simply tripped over Defendant while Defendant was handcuffing him and that neither Defendant, nor anyone else at the scene, ever struck, punched or hit Plaintiff in anyway. Because Plaintiff has failed to present facts that establish a constitutional violation, the Court will conclude its qualified

immunity inquiry. Therefore, the Court finds that Defendant Pimienta is entitled to qualified immunity.[8]

### III.   CONCLUSION

For the reasons set forth in this Opinion, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's federal claims. To the extent that Plaintiff's Complaint raises state law claims, the Court declines to assert supplemental jurisdiction over them, pursuant to 28 U.S.C. §1367(c)(3), which provides that the district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if....the district court has dismissed all claims over which it has original jurisdiction." An appropriate Order will issue.

s/Faith S. Hochberg
Hon. Faith S. Hochberg

---

[8] Plaintiff also brings claims against Officer Pimienta under both the Fifth and Fourteenth Amendments. However, both of these claims fail as a matter of law. Plaintiff's substantive due process claim under the Fourteenth Amendment fails as a matter of law because this type of claim is analyzed under the "more-specific provision" of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

The Fifth Amendment provides, in relevant part, that no person "shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. However, "the limitations of the [F]ifth [A]mendment restrict only federal governmental action...." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir.1983). Therefore, the rights provided by the Fifth Amendment do not apply to state actors. *Myers v. County of Somerset*, 515 F. Supp. 2d 492, 504 (D.N.J. 2007). Accordingly, Plaintiff's Fifth Amendment claim against Officer Pimienta fails as a matter of law.

13